# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## MIDLAND-ODESSA DIVISION

| | |
|---|---|
| ELBOW CREEK WIND PROJECT LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>3DEGREES  GROUP, INC.,<br><br>    Defendant. | **7:10-cv-126**<br><br>**COMPLAINT** |

Elbow Creek Wind Project LLC, as Plaintiff, files this Original Complaint against Defendant, 3Degrees Group, Inc., and would respectfully show this Court as follows:

## I.  JURISDICTION AND VENUE

1.    This Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties.

2.    Venue is proper in this district under 28 U.S.C. § 1391(a) because this is a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## II.  PARTIES

3.    Elbow Creek Wind Project LLC ("Elbow Creek") is a Texas limited liability company with its principal places of business in Princeton, New Jersey, and offices in Houston and Big Spring, Texas; Elbow Creek is a wholly owned subsidiary of NRG Energy, Inc ("NRG"), which is a Delaware corporation.

4.    3Degrees Group, Inc. ("3Degrees") is a California corporation with its principal place of business in San Francisco, California.

### III.  BACKGROUND FACTS

5.       Founded in 1989, NRG is a wholesale power generation company.  It owns and operates one of the industry's most diverse generation portfolios—including nuclear, wind, and solar power—providing approximately 24,000 megawatts of electric generating capacity, which is enough to power more than 20 million homes.  In November 2007, NRG won two of the energy industry's highest honors:  the Platts Industry Leadership and the Energy Company of the Year awards.

6.       NRG's retail business, Reliant Energy, serves more than 1.6 million residential, commercial, and industrial customers in Texas.

7.       In recent years, NRG has expanded its interests in renewable energy from wind and solar.  According to the Public Utility Commission of Texas, the term "renewable energy" means electricity that is made from environmentally friendly fuel resources, such as wind, water, biomass, or solar.

8.       In early 2009, Elbow Creek, completed construction on the 122 MW Elbow Creek Wind Project in Howard County, near Big Spring (the "Project").  The Project uses 53 Siemens 2.3-megawatt wind turbine generators, which provide enough renewable energy for nearly 100,000 households.

9.       In December 2007, before commencing construction, Elbow Creek executed a ten-year Renewable Energy Certificate Purchase and Sale Agreement (the "Agreement") with 3Degrees to sell all the **renewable energy certificates ("RECs")** associated with the electricity generated by the Project.

10.      A REC represents the property rights to the environmental, social, and other nonpower qualities of renewable energy.  One REC represents proof that one megawatt hour of electricity was generated from a renewable-energy resource, like wind.

11.    Thus, all renewable energy generators produce two distinct products: physical electricity and RECs.  At the point of generation, the two products can be sold together, as a bundled product, or separately, as unbundled products.  If the physical electricity and the RECs are sold to separate buyers, the electricity is no longer considered renewable. The REC, not the electricity itself, is what represents the renewable attributes of the electricity. When the electricity and the RECs are sold separately, one buyer receives the electricity and the other buyer receives a certificate (which acknowledges that the electricity derived from a source is renewable).

12.    Simply put, RECs can be (and often are) sold separately from the underlying physical electricity generated from a renewable energy resource.  Once a seller decouples the electricity and the REC, he cannot sell the electricity as "renewable"—its "renewableness" is gone with REC's sale.

13.    Because RECs can be sold separately from the underlying electricity, RECs are tracked from their creation to their final point of use.  Tracking ensures that every REC represents one-megawatt hour of renewable energy placed on the electricity grid, and that the RECs are not double-counted, thus inflating the amount of claimed renewable energy generated and supplied into the grid.

14.    Because the Project produces renewable energy, it thus produces both RECs and electricity.

15.    Under the Agreement, 3Degrees agreed to purchase all of the RECs produced by the Project beginning at the commercial operation of the facility and for a full ten calendar years after the end of the calendar year in which commercial operation is achieved.

16.     Pursuant to the Agreement, the parties further agreed that a REC means "(i) a certificate generated on the ERCOT Generation Information Tracking System, or (ii) any certificate or attestation with respect to the Non Power Attributes and Reporting Rights." ERCOT is the Electric Reliability Council of Texas, which manages the flow of electric power to 22 million Texas customers and issues RECs.

17.     Each party also agreed to provide the other notice of a breach and thirty business days from receipt of such notice to cure such breaches (the "Cure Period").

18.     On September 13, 2010, 3Degrees falsely alleged via letter that Elbow Creek or its affiliates have "taken actions which have claimed for NRG the RECs which Elbow Creek has contracted to deliver to 3Degrees." It continued that, "[b]ecause NRG has claimed the RECs, Elbow Creek has failed to deliver RECs which meet the requirement of the Agreement." Specifically, 3Degrees incorrectly points to three instances—a December 2008 press release, a March 2010 Fact Sheet, and NRG advertising—in which Elbow Creek allegedly "marketed or otherwise represented" the electricity generated at Elbow Creek as "renewable," "clean," "no carbon," and "zero carbon." 3Degrees also alleged that Elbow Creek violated Green-e's national standards when transferring the RECs. Based on these wrongfully alleged breaches, and without respecting the cure period, 3Degrees attempted to return to Elbow Creek the second-quarter 2010 RECs, totaling 99,009 RECs, and failed to pay for such RECs.

19.     Green-e is an organization that provides guidelines, disclosures, and standards for consumer protection from potential double counting of RECs in the unregulated voluntary renewable energy market. Certified renewable energy sold to a consumer cannot also be counted by a utility to meet a state's renewable energy portfolio goal or standard

imposed on that utility. Renewable energy must only be attributed to the customer purchasing it.

20.     The parties' dispute hinges on this language from the Agreement: "The electricity generated with Renewable Energy Certificates was not and will not be separately sold, or marketed as renewable energy, renewable electricity, clean energy, zero-emission energy, or in any similar manner."

21.     Neither Elbow Creek nor NRG have sold or offered to sell the electricity generated by the Project as renewable energy. Instead, having unbundled and sold the RECs to 3Degrees, Elbow Creek simply sells the electricity without claiming that the electricity is renewable. Moreover, Elbow Creek has not claimed any credit for the RECs nor improperly commingled the RECs with the electricity. Nor has NRG claimed any credit for the RECs.

22.     In addition, Elbow Creek and NRG are not utility companies; they are energy-service providers. Thus, neither Elbow Creek nor NRG are required to meet a Texas renewable energy goal or standard and therefore have no incentive to claim the RECs. The standards from both the parties' Agreement and from Green-e proscribe double counting RECs. Elbow Creek and NRG have always comported with those standards.

23.     Furthermore, even if Elbow Creek's three statements violated the Agreement—which Elbow Creek denies, as stated in the foregoing paragraphs—Elbow Creek has nevertheless clarified any potential ambiguity within the Cure Period. The statements now provide either that Elbow Creek's RECs are sold separately or eliminate any specific reference to Elbow Creek and the renewable attributes of its electricity. Thus, even if there could have been any potential for confusion about commingling of electricity and RECs from Elbow Creek, no potential for confusion remains.

24.     Article 7 of the parties' Agreement prescribes that "the laws of the state of New York without regard to its conflict of law principles" governs disputes arising from this Agreement.  Thus, Elbow Creek asserts the following claims under the laws of the State of New York.

## IV. <u>FIRST CAUSE OF ACTION</u>

### (DECLARATORY JUDGMENT)

25.     Elbow Creek incorporates by reference each of the foregoing paragraphs.

26.     Elbow Creek requests a declaratory judgment under 28 U.S.C. § 2201(a) that it has not breached the parties' Agreement because it has not sold or offered to sell its electricity as renewable.  Moreover, even if the alleged statements are considered a breach, which Elbow Creek denies, Elbow Creek cured that breach within the Cure Period.  3Degrees thus never had any basis to return the second-quarter RECs, in violation of the parties' Agreement.

27.     This court may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties because a justiciable controversy exists. *See id.*

## V. <u>SECOND CAUSE OF ACTION</u>

### (BREACH OF CONTRACT)

28.     Elbow Creek incorporates by reference paragraphs 1 through 24.

29.     3Degrees has breached the Agreement by failing to follow the provisions allowing for the Cure Period in the Agreement and by attempting to return to Elbow Creek 99,009 RECs, which represent the total RECs during the second quarter of 2010, and failing to pay for such RECs.  3Degrees is unequivocally required "to purchase and receive all

Renewable Energy Certificates produced" during the Agreement's term. But it has failed to do so. As such, it has breached the parties' Agreement.

30.     3Degrees' failure to abide by the Cure Period and its rejection of the RECs are breaches of the Agreement.

31.     3Degrees' breaches have resulted in substantial damages to Elbow Creek.

## VI. <u>ATTORNEY'S FEES</u>

32.     As specifically authorized under Article 8 of the parties' Agreement, Elbow Creek seeks reasonable attorney's fees, costs, and investigation expenses as the prevailing party.

## VII.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Elbow Creek prays as follows:

a.      a declaration that Elbow Creek has not breached the parties' Agreement;

b.      actual damages;

c.      attorney's fees, costs, and investigation expenses;

d.      prejudgment and postjudgment interest as provided by law;

e.      such other and further relief to which it may be justly entitled.

Respectfully submitted,

BAKER BOTTS L.L.P.


By:   /s/ Mark R. Robeck
         Mark R. Robeck
         State Bar No. 16990040
         Mark.Robeck@bakerbotts.com
         One Shell Plaza
         910 Louisiana
         Houston, Texas 77002-4995
         Telephone: 713.229.1234
         Facsimile:  713.229.2872

ATTORNEYS FOR PLAINTIFF
ELBOW CREEK WIND PROJECT LLC